IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FILED
MAR 16 2017
Clerk, U.S Courts
District Of Montana
Missoula Division

| | |
|---|---|
| LOURDES KATHLEEN BENITEZ-FIELD, Alien Number 200-089-980, | CV 13–31–M–DLC |
| Plaintiff, | ORDER |
| vs. | |
| JEFFERSON SESSIONS, Attorney General of the United States; JOHN KELLY, Secretary of Department of Homeland Security; LAURENCE CARROLL, Supervising Detention and Deportation Officer, Immigration & Customs Enforcement, Helena Detention and Removal Office; TODD MCWHORTER, Acting Field Office Director, Immigration & Customs Enforcement, Salt Lake City Detention and Removal Office; and DIRECTOR, USCIS Vermont Service Center, | |
| Defendants.[1] | |

Before the Court is Plaintiff's (1) request for a temporary restraining order

and preliminary injunction enjoining Immigration and Customs Enforcement

("ICE") from removing her from the United States; and (2) motion to appoint

---

[1] Jefferson Sessions is substituted for Loretta Lynch, and John Kelly is substituted for Jeh Johnson. *See* Fed. R. Civ. P. 25(d).

-1-

counsel.  Also before the Court is Defendants' motion to dismiss for lack of

jurisdiction.  As discussed in detail below, the Court will deny Plaintiff's motions

and grant Defendants' motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Lourdes Kathleen Benitez-Field ("Benitez-Field") is a citizen of

Spain and has been living in the United States since 1992.  Benitez-Field last

entered the United States in September 2003 under the Visa Waiver Program.

This program allows citizens of designated program counties to enter the United

States for 90 days without a visa.  In September 2004, Benitez-Field married Jesse

Lane King "(King"), a United States citizen.  However, the couple divorced in

2010 after King allegedly abused Benitez-Field and "tipped off" ICE as to her

unlawful immigration status.

According to Benitez-Field, King misled her to believe that he had applied

for her lawful permanent resident status when in reality he had done no such thing.

Benitez-Field also states that King was emotionally and physically abusive

towards her and used her immigration status against her, threatening that he could

get her deported at any time.  This alleged behavior came to a head in August of

2010 when King was charged with Partner or Family Member Assault after

allegedly physically assaulting Benitez-Field.[2] After Benitez-Field obtained an

order of protection against King, he allegedly retaliated by reporting

Benitez-Field's unlawful status to immigration officials. According to

Benitez-Field, King supplied "false" information to ICE in the hopes that they

would investigate and deport her. Presented with this information, ICE did in fact

begin an investigation into Benitez-Field's lawful status.

Based on ICE's investigation, on January 5, 2011, Benitez-Field was

indicted in a six count criminal indictment in the United States District Court for

the District of Montana. *United States v. Benitez-Field*, No. CR 11-01-M-DWM

(D. Mont. 2011) (Molloy, J.). Counts I, III, V, and VI of the Indictment charged

Benitez-Field with making false statements to the United States Government in

violation of 18 U.S.C. § 1001(a)(2), (3). Counts II and IV charged her with

fraudulent use or possession of an alien registration receipt card in violation of 18

U.S.C. § 1546.[3] Ultimately, Benitez-Field pled guilty to Count II. At the change

of plea hearing, Benitez-Field admitted to possessing a fraudulent alien

---

[2] The criminal case against King was dismissed by Montana's Fourth Judicial District Court, Missoula County, on December 10, 2012. *State of Montana v. Jesse Lane King*, Cause No. DC-11-304 (Dec. 10, 2012). Despite this fact, Defendants apparently concede that Benitez-Field is considered an abused spouse under the Violence Against Women Act.

[3] The Court notes that the actual Indictment charges Benitez-Field with "FRAUDULENT USE OF AN ALIEN REGISTRATION RECEIPT CARD." *United States v. Benitez-Field*, No. CR 11-01-M-DWM (2011) (Molloy, J.) (Doc. 1 at 2).

registration card, but denied using it in order to receive benefits through various entitlement programs as alleged in the Indictment.

Benitez-Field ultimately pled guilty to Count II and the Government agreed to dismiss all other counts. She was sentenced to term of imprisonment of time served after spending 92 days in custody. Benitez-Field was also ordered to pay $74,162.10 in restitution. Notably, $47,972.10 of the restitution was to be paid to the Department of Health and Human Services for the State of Montana, and $26,190.00 to the Missoula Housing Authority.

During her criminal proceedings, on March 28, 2011, ICE issued an Order of Deportation for Benitez-Field pursuant to sections 217 and 241 of the Immigration and Nationality Act. This deportation order was based on Benitez-Field overstaying the 90 days permitted under the Visa Waiver Program. Following this deportation order, on July 18, 2011, Benitez-Field self-petitioned for lawful immigration status under the Violence Against Women Act ("VAWA"). This act allows an abused spouse of a United States citizen to petition for lawful permanent resident status independently of her spouse, who would otherwise have to sponsor her.

As a result of her VAWA petition, ICE issued an Order of Supervision allowing Benitez-Field to remain free from custody while the petition was

pending. However, on January 9, 2013, Benitez-Field received notice that, despite ICE's previous order, she was now facing immediate deportation and was required to report to Helena, Montana, for detention and deportation proceedings. Following this notice, Benitez-Field filed suit in this Court requesting, among other forms of relief, the issuance of a temporary restraining order and preliminary injunction preventing her removal. Primarily, Benitez-Field requested that the Court stay her removal until ICE adjudicated her VAWA petition. The Court issued a temporary restraining Order on February 1, 2013, and scheduled a hearing on the preliminary injunction for February 13, 2013. (Doc. 5.) At the hearing, counsel for Defendants requested additional time to brief the issues raised in the motion for preliminary injunction and requested that the Court keep the temporary restraining Order in place until briefing was completed and a hearing was held. The Court accommodated this request and scheduled a hearing for March 15, 2013. (Doc. 10.)

However, before the hearing, the parties filed a joint motion to: (1) stay the case for six months; (2) dissolve the temporary restraining Order; and (3) vacate the scheduled hearing. Apparently, ICE had granted Benitez-Field a discretionary stay of deportation or removal for six months in order for the United States Citizenship and Immigration Services ("USCIS"), the government body

responsible for rendering a decision on the VAWA petition, to receive more evidence. (Doc. 12.) The Court granted the parties' request, dissolved the temporary Order, and stayed the proceedings of the case. The parties were instructed to file a status report within six months notifying the Court as to the status of the VAWA proceeding. (Doc. 13.)

During the stay, on September 11, 2013, the USCIS issued a "Notice of Intent to Deny" the VAWA petition after finding that Benitez-Field "did not have the requisite good moral character required for VAWA relief." (Doc. 16.) This finding was based on Benitez-Field's 2011 criminal conviction for fraudulent use or possession of an alien registration card. Benitez-Field notified the Court that she intended to appeal the USCIS's decision to the Administrative Appeals Office ("AAO") and requested to keep the stay in place until the AAO rendered its decision. The Court granted the request and ordered the parties to file status reports updating the Court on the progress of the appeal. (Docs. 17, 19, 21, 24, 26, 27.)

While the VAWA appeal was pending, Benitez-Field also submitted a "U visa" petition to the USCIS. This program was created under the Victims of Trafficking and Violence Protection Act of 2009, and allows alien victims of criminal activity to seek lawful immigration status as a result of their assistance to

law enforcement in the investigation and prosecution of criminal activity. To be eligible to for a U visa, the applicant must be admissible under current United States immigration law. Anticipating that the USCIS would deem her ineligible due to her 2011 criminal conviction, Benitez-Field submitted a Form I-192 Application for Advance Permission to Enter as a Nonimmigrant. This form, if granted, would provide a waiver for any grounds of inadmissibility that the USCIS determined.

However, the USCIS denied both the U visa petition and the I-192 waiver on April 8, 2014. Benitez-Field timely appealed this denial to the AAO. While the U visa and VAWA appeals were pending, the Court granted the parties' request to continue the stay. On February 5, 2015, the AAO affirmed the denial of the applications and dismissed both the U visa and VAWA appeals. In response, Benitez-Field submitted I-290B motions to reopen and reconsider the AAO's denials of the appeals.

Before the AAO rendered a decision, on September 8, 2016, Defendants notified Benitez-Field that they intended to move the Court to lift the stay and immediately proceed with deportation proceedings. The next day, Benitez-Field filed an Amended Complaint and moved for a temporary restraining order and/or preliminary injunction preventing her removal. In response to these motions,

Defendants clarified they would not seek removal until the Court lifted the stay. Defendants also moved to dismiss this case for lack of jurisdiction and to lift the stay. Due to Defendants' representation that they would not seek removal until the Court lifted the stay, the Court found that Benitez-Field's removal was not imminent and set a hearing on her motion for temporary restraining order and/or preliminary injunction, and Defendants' motion to dismiss.

Shortly after the hearing was set, Benitez-Field moved to continue it due to representations by Defendants that the AAO would soon render decisions on the motions to reopen and reconsider the denials of the appeals. Accordingly, the Court vacated the hearing and ordered the parties to file a joint status report updating the Court on the status of the decisions. On November 14, 2016, the AAO denied Benitez-Field's motions to reopen and reconsider the denials of her U visa and VAWA applications. Because the motion for temporary restraining order and/or preliminary injunction and motion to dismiss were fully briefed and ripe for decision, the Court reset the hearing on these motions for the next month.

Shortly after resetting the hearing, however, Benitez-Field's lead attorney, Shahid Haque-Hausrath, moved to withdraw from representation due to "unresolvable conflicts of interest that have arisen, making it impossible for the undersigned counsel to fulfill all professional obligations towards Ms.

Benitez-Field."[4] (Doc. 58.) In addition to the motion, counsel for Benitez-Field filed a consent to withdrawal form, signed by Benitez-Field, which consented to the withdrawal of Mr. Haque-Hausrath. Because Benitez-Field was now representing herself pro se, the Court again vacated and reset the hearing to take place the following month in order to allow time for Benitez-Field to secure new representation. Following this continuance, Benitez-Field notified the Court that she had just spoke with an attorney that had "shown an interest in reviewing and possibly taking [her] case," and moved for another continuance. (Doc. 66.) Based upon this representation, the Court continued that the hearing until February 1, 2017.

On January 30, 2017, attorney Helge Naber, filed a notice of limited appearance on behalf of Benitez-Field and moved to continue the hearing because he could not attend it due to a previously scheduled court appearance in Great Falls, Montana. In addition, Mr. Naber moved the Court to appoint him as counsel for Benitez-Field pursuant to several provisions in federal law. However, the Court denied the motion to continue the hearing, and arguments occurred as

---

[4] Benitez-Field's other attorney, Brian Miller, also moved to withdraw at this time. However, Mr. Miller's involvement in this case was minimal as he only appeared in this case for the sole purpose of representing Benitez-Field at a hearing that Mr. Haque-Hausrath could not attend.

scheduled on February 1, 2017.[5] These motions are now ready for decision.

## ANALYSIS

### I. Motion to Appoint Counsel

As mentioned above, Benitez-Field, through limited appearance counsel,

moves for court appointed representation pursuant to federal law. Benitez-Field

identifies three provisions in federal law that could support representation by court

appointed counsel. The Court will address each provision.

First, Benitez-Field argues that counsel should be appointed pursuant to 28

U.S.C. § 1915(e)(1). This subsection states that "[t]he court may request an

attorney to represent any person unable to afford counsel." 28 U.S.C. §

1915(e)(1). However, as stated by the Court of Appeals for the Ninth Circuit:

> The court may appoint counsel under section 1915[(e)] only under
> "exceptional circumstances." "A finding of exceptional
> circumstances requires an evaluation of both 'the likelihood of
> success on the merits and the ability of the petitioner to articulate his
> claims pro se in light of the complexity of the legal issues involved.'
> Neither of these factors is dispositive and both must be viewed

---

[5] The Court notes that it denied the motion to continue the hearing because Mr. Naber's notice of limited appearance stated that he was representing Benitez-Field "for the sole purpose of presenting her Petition for Appointment of Counsel in the matter to the Court for consideration." (Doc. 70 at 1.) Thus, because Mr. Naber was not appearing for the purpose of arguing in favor of the motion for temporary restraining order and/or preliminary injunction, and against Defendants' motion to dismiss, the Court declined to continue the hearing for the fourth time. The Court reserved ruling on the motion to appoint counsel until Defendants filed a response. Because the time to respond to the motion to appoint counsel has come and gone, the Court now considers the issue ripe for decision.

together before reaching a decision."

*Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (*quoting Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

Applying this two-pronged analysis, the Court finds that both of these factors weigh in favor of denying the motion. First, as discussed in detail below, the likelihood that Benitez-Field's claim will be successful is not high. Second, the ability of Benitez-Field to articulate her claims is largely now moot. The Court recognizes that immigration law is an area of the law that can be confusing and difficult to understand at times. However, Benitez-Field's previous attorney, Mr. Haque-Hausrath, has already articulated the basis for her claim and has drafted and filed numerous documents in support, including: (1) an Amended Complaint; (2) a motion for a temporary restraining order and/or a preliminary injunction; and (3) a motion for summary judgment with an opening brief. The Court concedes that a professional attorney could be helpful to Benitez-Field as she progresses through her case. Nevertheless, an attorney is not absolutely critical to Benitez-Field's claim at this point in the litigation. The Court therefore denies the motion as it pertains to 28 U.S.C. § 1915(e)(1).

Next, Benitez-Field moves for counsel under 18 U.S.C. § 3006(a)(1)(E). Under this provision, a court shall appoint representation "for any financially

-11-

eligible person who . . . is charged with a violation of supervised release or faces modification, reduction, or enlargement of a condition, or extension or revocation of a term of supervised release." 18 U.S.C. § 3006(a)(1)(E). Relying on this statutory language, Benitez-Field contends that because ICE placed her under an "Order of Supervision," she is now under supervised release per § 3006(a)(1)(E). (*See* Doc. 1-14.) Further, Benitez-Field argues, because she is subject to immediate removal should she be unsuccessful in this matter, she is subject to revocation of her supervised release and is entitled to Court appointed representation under this section. Benitez-Field misapplies § 3006(a)(1)(E).

The Court first notes that this section is contained in title 18 of the United States Code. This title deals exclusively with criminal law and procedure, not administrative actions such as the case at bar. Second, even if the Court would ignore the fact that this is an administrative matter and not a criminal one, the plain language of the statute only applies in situations where the Government charges an individual with a violation of a condition of supervised release, or that individual's conditions of supervised release are being altered by the Court in some way. Here, in contrast, Benitez-Field is neither being "charged" by the Government for violating the "Order of Supervision," nor are her conditions being altered in some way. Rather, she is simply being removed for overstaying her

-12-

visa. As such, § Section 3006(a)(1)(E) does not apply to this situation.

Lastly, Benitez-Field moves for the appointment of counsel pursuant to 18 U.S.C. § 3006A(a)(1)(E), which allows a court to appoint counsel if: (1) the person is "financially eligible" under the statute; (2) "the interests of justice so require"; and (3) the person "is charged with a Class B or C misdemeanor, or an infraction for which a sentence to confinement is authorized." 18 U.S.C. §3006A(a)(2)(A). Similar to her previous argument, Benitez-Field contends that she is being removed by ICE for committing two "infractions," i.e., overstaying her visa and accepting employment in violation of the terms of her visa. As a result of these infractions, she will be detained by ICE and removed within 90 days. Because she will be detained, Benitez-Field argues, she is subject to a sentence of "confinement" and court appointed representation is required. Again, Benitez-Field misapplies 18 U.S.C. §3006A.

Notwithstanding the fact that this case is an administrative matter and not a criminal matter, under the plain language of §3006A(a)(2)(A), counsel should only be appointed if she is facing "a sentence to confinement." 18 U.S.C. §3006A(a)(2)(A). Here, contrary to her argument, Benitez-Field is not facing a sentence of confinement. Rather, her "sentence," applying the term broadly, is removal from the United States, not criminal confinement or incarceration, and

-13-

detention is merely a collateral administrative consequence of that removal. Nevertheless, even if the Court could construe this section as applying to Benitez-Field's removal, the Court does not find that the "interests of justice" require the appointment of counsel. The Court comes to this conclusion for the same reasons it found that "exceptional circumstances" were not present in this case pursuant to 28 U.S.C. § 1915(e)(1). Specifically, Benitez-Field's former attorney has briefed this case to a point where current representation, though helpful, is not critical to the litigation. Accordingly, the Court declines to appoint counsel pursuant to 18 U.S.C. §3006A(a)(2)(A) and Benitez-Field's motion to appoint counsel is denied.

## II. Motion to Dismiss

The Court will first address the motion to dismiss due to the fact that Defendants challenge Benitez-Field's claims on jurisdictional grounds and because some of the claims raised in her Amended Complaint are now moot. Further, Benitez-Field's motion for preliminary injunction concerns an issue that is central and intertwined with the motion to dismiss. Thus, these motions will be reviewed together.

Defendants assert that all counts in the Amended Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rules of Civil

procedure 12(b)(1) ("lack of subject-matter jurisdiction") and 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Federal courts do not have the authority to consider cases when they lack subject-matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)."). Accordingly, a court must dismiss a complaint if it lacks subject-matter jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.")

## A. Counts I & II

First, the Court finds that Counts I and II are moot and will be dismissed. Count I seeks a writ of mandamus to compel the USCIS to adjudicate Benitez-Field's U visa and VAWA petitions. However, the AAO denied Plaintiff's motion to reopen and reconsider the denials of her U visa and VAWA applications on November 14, 2016. (Docs. 56-1, 56-2.) Because Benitez-Field has already received the relief she requests under Count I, the Court finds that this claim is now moot and must be dismissed.

Likewise, Count II of the First Amended Complaint seek declaratory relief from the Court finding that Benitez-Field cannot be removed until her VAWA petition has been adjudicated. Similar to Count I, because the denial of her VAWA petition has been fully adjudicated (*id.*), the Court finds that this claim is now moot. Count II is dismissed.

## B. Counts III-VII

Count III of the Amended Complaint seeks a preliminary injunction enjoining ICE from removing Benitez-Field "because USCIS has completely failed to adhere to binding U.S. Supreme Court precedent regarding the evaluation of criminal convictions, and unless corrected ICE plans to immediately move forward to deport the Plaintiff." (Doc. 29 at 26.) In her reply brief to the motion for preliminary injunction, Benitez-Field clarifies that she is seeking to enjoin her removal until the Court can address the merits of the remaining claims in her Amended Complaint. These claims, Counts IV through VII, seek review of the February 2016 AAO decision which denied her appeals. Specifically, Count IV seeks review of the denial of Benitez-Field's U visa under the Administrative Procedures Act ("APA"), 5 U.S.C.§ 706, and Count V requests declaratory judgment that her 2011 felony conviction was not a crime of moral turpitude. Similarly, Count VI requests APA review of the VAWA petition and Count VII

-16-

seeks a declaratory ruling that her conviction for fraudulent use or possession of an alien registration receipt card under 18 U.S.C. § 1546 is neither a crime involving moral turpitude nor an aggravated felony.

In their briefing, the parties dispute whether there is a final agency action allowing for review under the APA. 5 U.S.C.§ 704 ("Agency action made reviewable by statute and *final agency action* for which there is no other adequate remedy in a court are subject to judicial review.") (emphasis added). However, this issue is now moot because the AAO denied Benitez-Field's motions to reopen and reconsider the denials of her U visa and VAWA applications on November 14, 2016. (Docs. 56-1, 56-2.) Thus, there is now a final agency action to review under the APA. *Cabaccang v. U.S. Citizenship & Immigration Servs.*, 627 F.3d 1313, 1316 (9th Cir. 2010) ("[A] motion for reconsideration, an appeal to a superior agency authority, or an intra-agency appeal to an administrative law judge (ALJ) all render an agency decision nonfinal.").

Nevertheless, Counts IV through VII seek review of the February 2016 AAO decision. Because these claims seek review of the AAO's prior decision, and not the most recent November 2016 decision, i.e., the final agency decision, the Court finds that it lacks jurisdiction to review Counts III through VII and they must be dismissed. *Mamigonian v. Biggs*, 710 F.3d 936, 938 (9th Cir. 2013)

(district court's dismissal of complaint for lack of jurisdiction was proper because the complaint was filed before the USCIS had issued the final agency decision concerning petitioner's adjustment-of-status applications, and final agency decision was subsequently issued after complaint was filed). Because the Court must dismiss Benitez-Field's Amended Complaint, the question before the Court is whether to dismiss it with prejudice, or without prejudice and with leave to amend.

Dismissal of a complaint with prejudice and without leave to amend is appropriate unless a complaint could be saved by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted). Here, the thrust of Benitez-Field's claim is that the AAO has erred in its review of her U visa and VAWA applications because it has erroneously determined that her 2011 conviction under 18 U.S.C. § 1546 was a crime of moral turpitude. (Doc. 40.) This is important because if her 2011 conviction for "Fraudulent Use or Possession of an Alien Registration Receipt Card" was a crime of moral turpitude, she would ineligible for lawful status under the U visa or VAWA programs.

As discussed above, Benitez-Field argues that she merely possessed the falsified alien registration card and she never used it. Mere possession of an alien registration receipt card, "without its use or proof of any intent to use it

-18-

unlawfully, is not a conviction for a crime involving moral turpitude." *Matter of Serna*, 20 I. & N. Dec. 579, 579 (BIA 1992). Benitez-Field argues that in its analysis of 2011 conviction, the AAO erred by analyzing her conviction under 18 U.S.C. § 1546 as if it was a conviction for "possession and use" of a falsified alien registration receipt card, and not "possession or use" of a falsified receipt card as stated in her 2011 Judgment. This error occurred, according to Benitez-Field, because the AAO did not apply a "categorical approach" to assessing the immigration consequences of her 2011 conviction and, instead, applied a "modified categorical approach" after finding that 18 U.S.C. § 1546 was a divisible statute. *See Mathis v. United States*, 136 S. Ct. 2243, 2253–2254 (2016) (discussing application of the categorical approach when reviewing prior convictions). Critically, Benitez-Field argues that the Court should begin its categorical analysis by looking to her conviction documents, namely: (1) the plea agreement; (2) the plea colloquy; and (3) her Judgment. The Court disagrees.

As discussed in the AAO's November 2016 decision, under the categorical approach, a court must first begin its analysis by reviewing the text of the statute under which the defendant was convicted. *Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 831 (BIA 2016) (*citing Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013)); *see also Taylor v. U.S.*, 495 U.S. 575, 600 (1990) (mandating that under

-19-

the categorical approach, courts must only look "to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions"). Here, Benitez-Field turns this approach on its head and argues that Court should only look to her conviction documents, as well as one part of the statute, for its analysis. The Court declines to take this approach and agrees with the AAO that focusing solely on the conviction document, i.e., Benitez-Field's Judgment, "would place significant and likely undue weight on the conviction document itself – if it referenced just the statute only (as many do) it would have one legal effect, and if, as here, it listed only part, it would have a quite different one." (Doc. 56-1 at 9.) Thus, even if the Court allowed Benitez-Field to file a Second Amended Complaint seeking review of the AAO's November 2016 decision, this would be futile because the Court would find that this decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014)

Similarly, if Benitez-Field amended her Complaint and moved for preliminary injunction until the Court could review the merits of her challenge to the November 2016 decision, the Court would deny the motion. In order to secure a preliminary injunction until the case could be decided on the merits, Benitez-Field must establish that: (1) she is likely to succeed on the merits; (2) she

-20-

is likely to suffer irreparable harm without preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[6] However, as stated above, because the Court would find that she is not likely to succeed on the merits of her claim, the Court would deny the motion for preliminary injunction. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011) (district court "properly considered the remaining *Winter* elements only as to claims it concluded were meritorious"). Therefore, the court will dismiss this case with prejudice and grant Defendants' motion to lift the stay.

Accordingly IT IS ORDERED that:

(1) Plaintiff's Motion to Appoint Counsel (Doc. 72) is DENIED;

(2) Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 29) is DENIED for lack of jurisdiction.

(3) Plaintiff's motion for Summary Judgment (Doc. 39) is DENIED for lack of jurisdiction;

(4) Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 43) is

---

[6] Defendants dispute that this is the proper standard for a preliminary injunction in this case and argue that the standard under 8 U.S.C. § 1252(f)(2) applies. *See* 8 U.S.C. § 1252(f)(2) ("[N]o court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law."). However, because the Court is dismissing the Complaint with prejudice, the Court declines to address Defendants' arguments.

GRANTED and the First Amended Complaint (Doc. 29) is DISMISSED with prejudice;

(5) The Clerk of Court is instructed to update the caption of this case in accordance with footnote 1 of this Order; and

(5) The stay imposed in this case is LIFTED and this case is CLOSED.

DATED this __16th__ day of March, 2017.

Dana L. Christensen, Chief Judge
United States District Court